UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| DANIEL R. WOOTEN,<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>MARTIN J. O'MALLEY, Commissioner of<br>the Social Security Administration,<br><br>　　　　　Defendant. | Case No. 1:23-CV-381-GSL |

## OPINION AND ORDER

This matter comes before the Court on Plaintiff Daniel R. Wooten's ("Wooten") appeal of the Social Security Administration's Decision dated April 27, 2023 (the "Decision") which found that Wooten was not disabled and not entitled to disability benefits. The parties have briefed the appeal. After considering the briefing and the administrative record, the Court finds, for the following reasons, that the Decision must be remanded.

### ANALYSIS

**A. Standard of Review**

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and quotations omitted). In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted).

While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

    **B.  Procedural Background**

Wooten filed an application for benefits on March 25, 2022, alleging disability beginning on April 17, 2020. The claim was denied initially and on reconsideration. On March 14, 2023, the parties participated in a hearing before an ALJ. The ALJ issued an unfavorable decision on April 27, 2023. (R. 28-44). This appeal followed.

### C. The ALJ's Decision

A person suffering from a disability that renders him unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A). If a claimant's application is denied initially and on reconsideration, he may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a*); Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). If step four is answered in the affirmative, the inquiry stops and the claimant is found to be not disabled. If step four is answered in the negative, the ALJ proceeds to step five.

Here, at step one, the ALJ found that Wooten did not engage in substantial gainful activity since April 17, 2020, the alleged onset date. At step two, the ALJ determined that Wooten had the

following severe impairments: morbid obesity; diabetes mellitus II; benign lipomas of back, status post excision, with residual pain; history of tongue lesion/squamous cell carcinoma of tongue, status-post excision; hypertension; sleep apnea; major depressive disorder; bipolar disorder; mood disorder; post-traumatic stress disorder; attention deficit-hyperactivity disorder; obsessive-compulsive disorder; bulimia nervosa; and alcohol use disorder. (R. 30-31). The ALJ further found that Wooten had the non-severe impairments of head injury while under the influence of alcohol, neurocognitive disorder without behavioral disturbance, benign prostatic hyperplasia with lower urinary tract symptoms, recent diagnosis of prostate cancer, marijuana use, and reduced visual acuity/blurry vision. (R. 31).

At step three, the ALJ found that Wooten did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 31). At step four, the ALJ found that Wooten had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant may occasionally balance, stoop, kneel, crouch, crawl, climb ramps and stairs, but may never climb ladders, ropes, or scaffolds; the claimant may frequently handle and finger bilaterally; the claimant may not be required to speak more than occasionally; the claimant must avoid concentrated exposure to unprotected heights, dangerous moving machinery, slippery, uneven, or moving surfaces; the claimant is limited to the performance of simple, routine, repetitive tasks, and to the making of no more than simple, work-related decisions [consistent with unskilled work, susceptible of being learned in thirty days or less and requiring little or no judgment to perform], which he would be able to sustain without frequent re-direction, conducted in a work setting free of strict or rigid production quotas, hourly quotas, or assembly line work, which setting requires no more than superficial interaction [defined as involving occasional and casual contact, with no prolonged conversations, and contact with supervisors would be short but would allow for supervisors to give instructions] with co workers, supervisors, or the general public; the claimant remains able to respond to the changes in a routine work setting.

(R. 34).

Also at step four, the ALJ found that Wooten is unable to perform past relevant work. (R. 42). However, at step five, the ALJ found that Wooten is capable of performing jobs that exist in significant numbers in the national economy. (R. 42). Thus, the ALJ ruled that Wooten was not disabled, as defined in the Social Security Act. (R. 43).

### 1. The ALJ's Evaluation of Wooten's Prostate Impairments

As noted above, the ALJ found Wooten's prostatic hyperplasia and prostate cancer non-severe impairments. Wooten claims that the ALJ failed to discuss the medical evidence and symptom reports related to Wooten's prostate problems and urinary frequency. The medical evidence related to Wooten's prostate is substantial. While his prostate cancer was only confirmed in February 2023, his symptoms, including an enlarged prostate and urinary frequency, date back to at least February 2020. (R. 930). Also, Wooten listed "enlarged prostate" as a disabling condition on his Disability Report which was filed in March 2022. (R. 305-16, 352). Wooten's urinary frequency is consistently noted in Wooten's medical records since February 2020. (R. 918, 919, 920, 924, 926-27, 930, 931, 936, 1020).

At the hearing, Wooten testified that he needed to use the restroom two to three times per hour, was getting up during the night up to eight times to use the restroom, and had resorted to wearing adult diapers due to urinating on himself. (R. 77, 91-92). Wooten further testified that he had a lot of pain with a burning sensation in his penis and sometimes had bloody urine as well as bloody bowel movements. (R. 78). The hearing before the ALJ was paused at least once to permit Wooten to use the restroom. (R. 94). Astonishingly, however, the ALJ completely failed to discuss any of this evidence and testimony related to Wooten's prostate issues. In fact, the word "prostate" only appears twice in the Decision where the ALJ stated it was unknown if Wooten's prostate

cancer diagnosis would last 12 months. (R. 31).

An ALJ must "confront the evidence that does not support [his] conclusion and explain why that evidence was rejected." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Further, an ALJ must explain his conclusions regarding the evaluation of subjective symptoms with legally sufficient and specific reasons, supported by substantial evidence. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). The Commissioner claims that the state agency physicians considered evidence of Wooten's enlarged prostate condition, which was characterized as "medically managed." (R. 132-33, 135, 152-53, 1019, 1030). The Commissioner then concludes that since the ALJ considered the prior administrative medical findings, the ALJ committed no error. However, as Wooten points out in reply, there is no assurance that the state agency physicians considered Wooten's prostate condition and related symptoms. A review of the reports reveals that the state agency physicians only noted that "enlarged prostate" was one of the conditions that Wooten reported on his disability application. (R. 132-33, 135, 139, 141-42, 145). The physicians' discussion of the evidence fails to mention any medical or other evidence about Wooten's enlarged prostate. Moreover, as they reviewed the case in October 2022, they were unaware of Wooten's 2023 prostate cancer diagnosis.

With respect to the July 2022 consultative internal medicine exam from Dr. Carson Roberts, M.D., which indicated Wooten's prostate condition was "medically managed", its important to note that Dr. Roberts performed a one-time internal medical exam of Wooten at the request of the Indiana DDB. (R. 1018-31). And the state agency physicians did not mention Dr. Robert's report to support their conclusions. Additionally, the ALJ never cited Dr. Robert's exam as a reason for discounting Wooten's symptom reports. Moreover, the fact that Wooten's prostate condition was

vaguely described as "medically managed" means little, as there is no indication in that report whether Wooten experienced functional limitations, and many debilitating conditions can be "medically managed" with treatment regimens, *i.e.* dialysis, chemotherapy.

Due to the complete lack of discussion of Wooten's prostate condition, as well as the vagueness of the state agency physicians' findings, this Court holds that remand is necessary for a thorough evaluation of Wooten's prostate conditions and the limitations they impose on his ability to maintain employment.

### 2. The ALJ's Duty to Develop the Record

An ALJ has an independent duty to ensure that the record is developed. *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009); HALLEX I-2-6-56 (An ALJ has a duty to ensure the administrative record is "fully and fairly developed" and will "make reasonable attempts to obtain evidence pertinent to the matters at issue.")  Although the claimant carries the burden of persuasion, the ALJ has a duty to "investigate the facts," and "develop the arguments both for and against granting benefits" before issuing a decision based on a preponderance of the evidence. *Sims v. Apfel*, 530 U.S. 103, 111 (2000).

Wooten claims that the ALJ in the present case failed to develop the record, and that the ALJ should have obtained an opinion from a medical expert or other medical source clarifying the duration and staging of his prostate condition, the prognosis, and the impact on his functioning. Notably, the ALJ virtually ignored Wooten's prostate condition, claiming there was no evidence the condition would last for 12 months.  Yet, as discussed above, the record contains evidence over at least a 12-month period related to Wooten's prostate issues.  Thus, Wooten is correct that the ALJ erred in dismissing the condition as non-durational and non-severe at step two without any

further development of the record.

Therefore, on remand, the ALJ must take care to ensure, within reason, that sufficient evidence is obtained regarding Wooten's prostate issues so that the ALJ may accurately assess Wooten's ability to maintain employment.

### 3. The ALJ's Failure to Consider the Combined Impact of All Impairments

The case law and the regulations clearly state that an ALJ must consider impairments in combination. *Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014); SSR 96-8p; 20 C.F.R. § 404.1523 (SSA must consider the combined effect of all impairments in determining eligibility). Here, according to the record, Wooten's urinary frequency caused him to have to relieve himself up to eight times a night and two to three times per hour during the day. This condition also caused worsening depression and anxiety and interfered with his sleep and his ability to focus. Wooten testified that his mental condition worsened since he was diagnosed with prostate cancer. (R. 93). Wooten testified that he sometimes went for weeks without showering. (R. 89). Wooten's fiancee testified that Wooten's mental health was getting worse, especially after his prostate cancer diagnosis. (R. 96). A Park Center mental health treatment record from February 2023 indicates Wooten was experiencing panic attacks related to his cancer work-up as well as low energy and motivation, poor focus and concentration, feelings of hopelessness and helplessness, difficulty falling and staying asleep, frequent nightmares, suicidal thoughts, and high social anxiety. (R. 1103). This Court agrees with Wooten that considering the ALJ's dismissal of Wooten's prostate impairments as non-severe, there is no assurance that the ALJ considered his prostate conditions in combination with Wooten's other impairments. Therefore, remand is warranted on this issue.

### 4. The ALJ's Evaluation of Wooten's Symptoms and Limitations

An ALJ's symptom evaluation is reviewed for legal error and will be reversed if, overall, the ALJ's factual conclusions are "patently wrong." *Cullinan v. Berryhill*, 878 F.3d 598, 604 (7th Cir. 2017); *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006). An ALJ's assessment is "patently wrong" when the findings lack adequate explanation, are not competently explained, not supported by substantial evidence from the record as a whole, or are otherwise factually or logically mistaken. *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006).

In addition to failing to discuss the evidence related to Wooten's prostate issues, the ALJ dismissed Wooten's other physical impairments, as well as his mental impairments, finding that his symptoms were not entirely consistent with the evidence. (R. 39). However, this is an incorrect standard as the symptoms need only be reasonably consistent with the record as a whole. 20 C.F.R. § 404.1529(c)(3); (c)(4). Additionally, the reasons the ALJ gave for discounting Wooten's symptoms are less than convincing. (R. 39). The ALJ failed to confront record evidence confirming that Wooten's mental health conditions were interfering with his ability to work before he was ultimately laid off in March 2020 due to COVID. (R. 481, 488, 490, 514, 520). This evidence shows Wooten's mental health was limiting his ability to sustain employment.

The evidence also shows progressive worsening of Wooten's physical and mental impairments after his job ended in March 2020, including an inpatient psychiatric admission from October 17-19, 2021 (R. 549, 553, 645-52, 712-733, 739-46, 789-804, 918-19, 1089, 1103-1112). With respect to the ALJ's reliance on a report that Wooten was only able to give a vague description of his low back pain to Dr. Lippie, it is important to note that Dr. Lippie was able to discern that these vague descriptions warranted surgery on Wooten's back to remove lumps.  Also

the fact that the pain was intense enough that Wooten agreed to the surgery is a factor weighing in favor of his symptom reports. *Israel v. Colvin*, 840 F.3d 432, 441 (7th Cir. 2016) (willingness to undergo "painful and risky procedures" to alleviate pain are actions that support the "credibility of claims regarding the severity of pain").

The ALJ also relied on a statement from Dr. Derickson that Wooten was not forthcoming, but the ALJ completely mischaracterized the statement. Dr. Derickson noted in the "psychiatric" part of his exam that Wooten demonstrated a "Pleasant, upbeat affect with limited judgment and insight (vs. not forthcoming)." (R. 920). A careful review of that medical record reveals that Dr. Derickson was concerned with Wooten's act of under-reporting his mental health symptoms, *i.e.* his reasons for inpatient psychiatric hospitalizations, not over-reporting his symptoms. (R. 920).

With respect to the ALJ's reliance on a mental status exam by Dr. Leslie Pedina, Ph.D., claiming that Dr. Predina indicated that Wooten gave inconsistent efforts on mental status testing (R. 39), again the ALJ mischaracterized the record. Dr. Predina actually stated that Wooten "appeared to put forth good effort on the evaluation tasks" with the exception being the test of serial sevens. (R. 1035). Dr. Predina also administered Wechsler Memory testing, and she raised no concerns about Wooten's effort on that exam which produced results in the extremely low to borderline range. (R. 1036-37).

In light of the above, this Court agrees with Wooten that the ALJ's symptom evaluation was patently wrong and lacks a logical bridge. Thus, remand is appropriate for a proper evaluation of Wooten's symptoms and a re-evaluation of his RFC.

### 5. The ALJ's Evaluation of Dr. Predina's Medical Opinion

The medical opinion evaluation rules applicable to this case require the ALJ to consider

specific factors, with "supportability" and "consistency" at the top of the hierarchy of the factors for consideration. 20 C.F.R. §§ 404.1520c(2) and 416.920c(2).  Here, Wooten argues that the ALJ failed to properly evaluate the opinion of SSA's own examining psychologist, Dr. Predina, and dismissed it as "partially persuasive" without performing the proper analysis of the consistency and supportability of her opinion. (R. 41). Dr. Predina opined Wooten had "significant deficits" with memory functioning, his orientation appeared impaired, his ability to concentrate and persist appeared impaired, he would have problems concentrating and persisting on job responsibilities, and would have "considerable problems recalling tasks on jobs." (R. 1037). She also noted he would need supervision in management of his funds due to schizoaffective disorder. (R. 1037). Dr. Predina rendered her opinion after completing a mental status examination with memory testing. (R. 1033-1038). The memory scores were in the extremely low and borderline range. However, the ALJ characterized the examination showing deficits in cognitive functioning as "outliers".  (R. 41).

Wooten contends that the ALJ relied on medical speculation in his characterization of Dr. Predina's exam and failed to discuss consistency and supportability as required by the regulations and case law.  The Seventh Circuit has repeatedly held that an ALJ needs to provide a good explanation for rejecting the opinions of the agency doctors supporting disability.  *Jones v. Saul*, 823 F. App'x 434, 439 (7th Cir. 2020) (citing *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014));  *Garcia v. Colvin*, 741 F.3d 758 (7th Cir. 2013) (given their employment relationship, the agency's doctors are "unlikely ... to exaggerate an applicant's disability"). The ALJ also dismissed Dr. Predina's opinions about Wooten's work-related limitations as "vague" without seeking clarification.

The ALJ's discussion of Dr. Predina's opinion is preceded by a discussion of the opinions

of the state agency psychological consultants as follows:

> The state agency psychological consultants, J. Gange, Ph.D., and Ken Neville, Ph.D., each indicated that the claimant would be able to perform simple, repetitive tasks, involving brief interaction with co-workers and brief episodes of supervision, and that he would have no difficulties with changes inherent in a routine work setting. Each also indicated that the claimant had presented insufficient evidence with which to analyze his claim under Title II of the Act. Each of these doctors had the opportunity to review the evidence of record, to which each cited liberally in support of their conclusions, and each is well versed in the terminology and analytical framework employed in the disposition of these claims. The record shows a claimant with chronic psychological disorders. These would be expected to, the claimant reports (B4E/9-10), and the record supports (B18F/2, 6), do, impose deficits of the claimant's memory and concentration. However, the claimant is of average intellect (B3F/19), (B24F/15), with typically normal memory/attention, concentration/cognition (B3F/19), (B5F/37), (B24F/15, 60), driving a logical, goal-directed thought process (B3F/19), (B24F/15). Provided the claimant is limited to the performance of simple, routine, repetitive tasks, conducted free of the need to mull complex decisions or to adhere to anxiety- or frustration-inducing production pressures, the evidence shows the claimant has retained sufficient, residual, cognitive function to engage in competitive work. The claimant describes difficulties with others, and sometimes appears as anxious (B5F/14), or briefly tearful (B24F/15). However, treatment notes reliably describe him in pro social terms: with a normal mood and affect (B8F/12), (B5F/37), (B8F/78), (B22F/2), as pleasant (B9F/1, 11), or very pleasant (B8F/50), (B5F/71), as calm, cooperative, and polite (B3F/19). Even if demonstrably symptomatic of mood, the claimant is yet described as polite, conversive, engaging, exhibiting interpersonal relatedness and connectivity (B24F/15). Provided that both the frequency, and potential for escalation in the intensity, of his interaction with others is subjected to limitations, the evidence shows the claimant has retained sufficient, residual, social function to engage in competitive work. The claimant has described difficulties responding appropriately to stressors and changes (B4E/10). However, the treatment record generally describes the claimant as possessed of fair-to-normal insight and judgment (B3F/19), (B5F/14, 71), (B9F/1, 11), or as able to make logical and rational decisions (B24F/15). Provided he is limited to the performance of simple, routine, repetitive tasks to begin with, conducted free of the need to mull complex decisions, or to adhere to anxiety- or frustration-

> inducing production pressures, the evidence indicates that the claimant has retained sufficient, residual, adaptive function to engage in competitive work. These opinions overstate the claimant's ability to interact with the public to considerable degree. They overstate, to milder degree, the claimant's residual cognitive capacity. With the evidence added by the time of the hearing, and with the appearance and testimony of the claimant, there is enough evidence to analyze and adjudicate this claim, rendering that portion of these opinions effectively mood [sic]. However, they remain broadly consistent with, and supported by, the overall evidence of record and are persuasive.

(R. 40-41).

The ALJ then discussed Dr. Predina's opinion as follows:

> The consultative psychological examiner, Leslie Predina, Ph.D., indicated that the claimant would have significant difficulties understanding, remembering and carrying out instructions, significant difficulties concentrating, persisting and maintaining pace, and some difficulties interacting with others. She did not speak directly to the claimant's ability to adapt and manage himself, save that she reported slight impairment of judgment and commonsense. Dr. Predina examined the claimant on a single occasion and was reporting within the bounds of her professional certifications and specialty. As this opinion indicates limitations in each of the four, psychologically based, work-related areas of function, it is at least partially consistent with, and supported by, the overall evidence of record, discussed in digest form in the preceding paragraph. However, by comparison to the balance of the overall record, deficits of cognitive function in her examination appear clearly to be "outliers". Moreover, as to the specific degree of work-related limitation that would appertain, this opinion is vague and therefore less than helpful. In consequence, the opinion is only partially persuasive.

(R. 41).

This Court has searched the Decision in vain for the requisite "good reason" for the ALJ's rejection of Dr. Predina's opinion. Although the ALJ discussed the opinions of the state agency psychological consultants, who did not see or examine Wooten, the discussion is contradictory in places. For example, the ALJ found that Wooten has chronic psychological disorders that impose

deficits in memory and concentration, but also found that Wooten had normal memory and attention. Additionally the ALJ found that the state agency psychological consultants' opinions were consistent with the record, while also inexplicably noting that the state agency psychological consultants overstated Wooten's congnitive capacity. This would seem to indicate that the opinions were only partially consistent with the record. Yet the opinions were deemed "persuasive". The ALJ then found Dr. Predina's opinion to be partially consistent and supported by the record, but only "partially persuasive".  As Dr. Predina actually examined and administered tests to Wooten, which tests found significant deficits, this Court cannot fathom any "good reason" for rejecting Dr. Predina's opinion, yet accepting the opinions of the state agency psychological consultants. Therefore, remand is required for a balanced evaluation of Dr. Predina's opinion.

## CONCLUSION

For the reasons set forth above, the Defendant's Decision is REVERSED AND REMANDED. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant. SO ORDERED.

ENTERED: July 10, 2024

/s/ GRETCHEN S. LUND
Judge
United States District Court